UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHAEL VINCENT JOHNSON, | : | Case No. 3:23-cv-251 |
| Petitioner, | : | |
| vs. | : | Judge Michael J. Newman |
| | : | Magistrate Judge Kimberly A. Jolson |
| WARDEN, LEBANON CORRECTIONAL INSTITUTION, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner Michael Vincent Johnson ("Petitioner"), an inmate in state custody at the Warren County Correctional Institution, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (the "Petition"). (Doc. 1). Petitioner challenges his conviction and sentence set forth in the Montgomery County Court of Common Pleas, Case No. 2021-CR-4001. (*Id.* at PageID 1). This matter is before the Court on the Petition, Respondent's Return of Writ, (Doc. 6), Petitioner's Reply, (Doc. 7), and the state court record, (Doc. 5).

For the following reasons, this Court **RECOMMENDS** that this action be **DISMISSED with prejudice**, as all grounds for relief are barred from this Court's review by procedural default.

## I. FACTS AND PROCEDURAL HISTORY

### A. State Conviction and Sentence

On December 16, 2021, a Montgomery County, Ohio, grand jury charged Petitioner with single counts of discharging of a firearm on or near a prohibited premise with physical harm, felonious assault with a deadly weapon, and having weapons under disability. (Doc. 5 at PageID

24–25 (Ex. 1)).[1] The count for felonious assault included a firearm specification that added three years of imprisonment, and the count for having weapons while under disability was based on the allegation that Johnson had possessed a firearm while having a prior felony drug conviction. (*Id.*). Johnson pled not guilty to the indictment. (*Id.* at PageID 28–29 (Ex. 2)).

The Ohio Second District Court of Appeals (the "state appellate court") summarized the evidence submitted at trial and the facts underlying Petitioner's conviction as follows:

> [*P3] Johnson pled not guilty to all the indicted charges and the matter proceeded to a jury trial. At trial, the State called several witnesses to testify, including Daniel Timberman. Timberman testified that he is employed as a truckdriver and travels through the Dayton area once or twice a week. On the evening of December 6, 2021, Timberman was driving his truck in the center lane of U.S. 35 West in Dayton when he noticed a blue sedan weaving back and forth on the road with its hazard lights on. Timberman testified that a grey SUV was behind the blue sedan, and he initially thought the blue sedan was a disabled vehicle that the SUV was following. However, Timberman eventually noticed that every time the SUV would try to change lanes, the blue sedan would block it from doing so. While he was driving behind the vehicles, Timberman saw the driver of the blue sedan suddenly hit his brakes and come to a complete stop, which caused the SUV to rear-end the blue sedan. When this happened, Timberman stopped his truck 15 feet behind the vehicles in the middle of the highway. Timberman testified that while he was stopped behind the two vehicles, he observed the driver of the blue sedan exit his vehicle and fire two or three gunshots at the SUV while the SUV tried to back up and leave.
>
> [*P4] When describing the incident, Timberman testified that he did not actually see a firearm, but that he did see something in the driver's hand that had a "flash coming out right in front of [it]." Trial Tr. P. 139. Timberman also testified that he had "hunted [his] whole life" and "target shoot[s] multiple calibers, long guns, handguns, just about everything[,]" and based on his experience with firearms, he had no doubt that the driver of the" blue sedan had fired gunshots. *Id.* at 138. More specifically, Timberman testified that he knew they were gunshots based on the flashes he saw, the noises he heard, and the way he saw the driver's hand jump up.
>
> [*P5] Timberman further testified that his truck was equipped with a recording system that captured the incident on video. The video from Timberman's truck was admitted into evidence as State's Exhibit 1, and it showed the events testified to by Timberman. Specifically, the driver of the blue sedan can be seen on the video

---

[1] The Court includes Respondent's exhibit numbers in its designation of the state court record throughout this Report and Recommendation, as well as this Court's docket citations, for ease of reference.

exiting his vehicle in the middle lane of the highway, walking toward the SUV, and pointing his arm toward the SUV as the SUV attempted to back away. While the driver is pointing his arm at the SUV, two gunshots can be heard on the video as well. While neither a firearm nor flashes can be seen on the video, Timberman confirmed that at the time of the incident, he saw flashes that were not picked up by the recording system.

[*P6] Timberman testified that, after witnessing the shooting, he called 911 and reported the incident, he met with the police later that evening and provided a written statement. Timberman also testified that he advised the police about his truck's recording system and confirmed that the video recording of the shooting was turned over to the police.

[*P7] Kimberly Helton, a passenger of the SUV involved in the incident, also testified at trial. Helton testified that on the evening in question, her boyfriend, Michael Lake, was driving her in her mother's SUV to take boxes to a storage unit. Helton testified that as they were getting onto U.S. 35 from Smithville Road, she noticed a blue vehicle "driving crazy" behind them. Trial Tr. P. 219. Helton recognized the blue vehicle and knew that it belonged to Michael Johnson. Helton testified that she had dated Johnson for two or three months and had broken up with him a week before the shooting incident. Helton testified that when the blue vehicle got close enough, she was able to see that Johnson was the driver. Helton indicated that she was scared upon seeing that Johnson was the driver because Johnson had told her that he would hurt anyone that she "messed or got with." *Id.* at 231. More specifically, Helton explained that she did not know if Johnson was going to try to stop their vehicle and "get into it" with Lake. *Id.*

[*P8] Continuing, Helton testified that Johnson called her on the phone while they were driving and yelled something she could not understand. Helton testified that Johnson then drove his vehicle beside them and swerved at them. Thereafter, Helton claimed that Johnson drove in front of them and "brake checked them[,]" which caused them to hit the back of Johnson's vehicle. *Id.* at 222. After the collision, Helton saw Johnson get out of his vehicle on the highway; Helton was scared and told Lake to go because she did not know what Johnson was going to do. Helton testified that Lake could not immediately drive away because traffic was heavy and vehicles were "flying on both sides of [them]." *Id.* However, Helton testified that Lake was eventually able to drive away to the exit ramp at Steve Whalen Boulevard.

[*P9] Helton testified that as they were getting off the exit ramp, Lake told her that he had been shot. Helton then noticed that Lake had a bullet hole in his lower right arm, an injury which Helton confirmed Lake had not had prior to their altercation with Johnson. Helton testified that she never saw or heard a firearm and that she did not know Lake had been shot until he mentioned it to her. Helton suggested that she did not hear a firearm due to all the traffic and due to her being scared and screaming at Lake to "go go go." *Id.* at 223, 232.

3

[*P10] Helton testified that Johnson continued to follow them in his vehicle after they got off the highway and that he hit them from behind while they were on the Steve Whalen exit ramp. This second collision caused their vehicle to hit two or three trees off the roadway. After hitting the trees, Helton testified that she looked to her right and saw Johnson standing outside of his vehicle walking toward them. Helton testified that Lake was then able to start the SUV and drove away to a Dollar General store on Linden Avenue.

[*P11] Helton testified that when they got to the Dollar General store, she called her ex-boyfriend, Nathan Rader, and asked him to take her and Lake to the hospital because Lake had been shot. Rader testified at trial and confirmed that Helton had called him on the evening in question. Rader testified that Helton was crying and panicked during the call and that she had asked him to take her and Lake to the hospital because Michael Johnson had shot Lake on the highway. Rader also testified that he picked up Helton and Lake at the Dollar General store and took them to Miami Valley Hospital; when he picked them up, he saw that Lake had a wounded, bloody right arm.

[*P12] Cathline Layba, the physician who examined Lake at Miami Valley Hospital, testified that Lake presented with a penetrating wound that was consistent with a gunshot wound to the right forearm. Layba testified that Lake had told hospital staff that he was shot in the arm by his girlfriend's ex-boyfriend and that the ex-boyfriend had chased and rear-ended them on the highway before firing shots at their vehicle. Layba confirmed that a bullet fragment was removed from Lake's arm and that the bullet fragment was provided to law enforcement. The bullet fragment was admitted into evidence as State's Exhibit 38.

[*P13] Several investigating police officers also testified at trial and confirmed that no shell casings or firearms had been recovered from the area where the shooting had occurred. The State also presented evidence establishing that Johnson called 911 from a Sunoco gas station shortly after the shooting. The recording of the 911 call was admitted into evidence as State's Exhibit 5. On the recording, Johnson can be heard reporting that an SUV hit his blue Hyundai Sonata multiple times on U.S. 35 West and then again on the Steve Whalen Boulevard exit ramp. The officers who responded to the 911 call searched Johnson, his vehicle, the vehicle of a female who was helping Johnson at the scene, and the area around the Sunoco gas station where Johnson was located. The search did not yield any firearms, shell casings, or ammunition.

[*P14] Johnson was thereafter interviewed by a detective at the Dayton Police Department Safety Building. The interview was recorded and a portion of the interview was admitted into evidence as State's Exhibit 37. During the interview, Johnson told the detective that he had chased the SUV after it hit him but claimed that he had never exited his vehicle on U.S. 35. However, after the detective told Johnson that a video recording of the incident was taken by a truck, Johnson

changed his story; he admitted to getting out of his vehicle on U.S. 35 but denied firing any gunshots.

[*P15] For purposes of the charge for having weapons while under disability, the State presented a judgment entry establishing that Lake had a prior felony drug conviction. The judgment entry was admitted as State's Exhibit 34 and it established that in 1998, Johnson had been convicted in Hamilton County for preparation of marijuana for sale, a fourth-degree felony.

(*Id.* at PageID 116–21 (Ex. 8)).

A jury found Petitioner guilty of all the indicted charges and the firearm specification. (*Id.* at PageID 31–32 (Ex. 3)). On April 29, 2022, Petitioner was sentenced to four years in prison for discharge of a firearm on or near a prohibited premises, four years for felonious assault, three years for the attendant firearm specification, and three years for having weapons while under disability. (Doc. 5 at PageID 35–36 (Ex. 4)). The trial court ordered an aggregate mandatory minimum term of 11 years in prison to a maximum term of 13 years in prison. (*Id.*).

**B. Direct Appeal**

Petitioner, through new counsel, filed a notice of appeal with the state appellate court on May 15, 2022. (*Id.* at PageID 40–41). In his merits brief, Petitioner set forth the following six assignments of error:

1. [Petitioner's] right against double jeopardy was violated where there was a second conviction for the same offense and conduct.

2. The convictions for discharge near prohibited premise and felonious assault should merge because the crimes in this case are allied offenses of similar import.

3. [Petitioner] did not receive a fair trial where the prosecution elicited unqualified expert testimony and wrongfully steered the jury with falsehoods.

4. The imposition of consecutive sentences is not supported in the record because R.C. 2929.14(C)(4) was not complied with when the consecutive sentences were imposed.

5. Mandatory prison time was improperly imposed on [Petitioner] because nothing in evidence supports the necessary findings to impose mandatory time.

> 6. [Petitioner's] convictions were not supported with sufficient, competent credible evidence, where nothing definitely supports that [Petitioner] had or used a gun.

(*Id.* at PageID 47–74 (Ex. 6)).

The State submitted a responsive brief. (*Id.* at PageID 80–109 (Ex. 7)). In a written opinion, on December 22, 2022, the state appellate court affirmed the judgment of the trial court. (*Id.* at PageID 111–146 (Ex. 8)). Represented by the same counsel, Petitioner appealed the state appellate court's decision to the Ohio Supreme Court. (*Id.* at PageID 149–150 (Ex. 9)). In his memorandum in support of jurisdiction, Petitioner raised the following grounds for relief:

> 1. The Fifth and Fourteenth Amendments of the United States constitution are violated where a court fails to recognize and Appellant's right to double jeopardy thereby convincing the appellant a second time for the same offense and conduct.
>
> 2. In order to merge sentences, a trial court must make the findings mandated by R.C. 2941.25(A) and where both offenses are found to be allied offenses of similar import, the court should be required to merge Appellant's convictions.

(*Id.* at PageID 186–202 (Ex. 10)).

The State opposed. (*Id.* at PageID 238–251 (Ex. 11)). On April 11, 2023, the Ohio Supreme Court declined jurisdiction of the appeal. (*Id.* at PageID 253 (Ex. 12)).

## C. Federal Habeas

On August 30, 2023, Petitioner, through new counsel, filed his Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising three grounds for relief and facts in support. (Doc. 1). Respondent answered and filed the state court record. (Docs. 5, 6). Petitioner filed his reply. (Doc. 7). The matter is now ripe for review.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court shall not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable

6

application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

However, a federal court will generally refuse to consider a claim on habeas review if the claim is procedurally defaulted. *See Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977); *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (reaffirming procedural default rule and stating federal courts will not ordinarily "entertain a procedurally defaulted constitutional claim" in habeas petitions). "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

A petitioner can overcome a procedural default if a petitioner can demonstrate either: (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to review the claims "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 751, 753 (1991). To establish a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)) (internal quotation marks omitted).

7

**III. DISCUSSION**

Respondent argues that the claims set forth in Grounds One and Three of the Petition, addressing Petitioner's right to confront witnesses against him at trial and ineffective assistance of trial counsel, are unexhausted as they were never presented to the state courts and the time to do so has passed, rendering them unexhausted and procedurally defaulted. (Doc. 6 at PageID 688). Respondent also submits that Ground Two, addressing the prosecution's use of a layperson's testimony as expert testimony at Petitioner's trial, is procedurally defaulted under the independent and adequate state law doctrine. (*Id.* at PageID 689–90).

Petitioner advances conflicting arguments, initially indicating in his Petition that all Grounds were exhausted, (*See* Doc.. 1 at PageID 5, 7, 9), but also appearing to admit his claims are procedurally defaulted, arguing that their procedural default is excused under the cause and prejudice doctrine due to his attorney having failed to file all claims on direct appeal to the Ohio Supreme Court as Petitioner instructed. (*See* Doc. 7 at PageID 702 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).[2]

The Undersigned agrees with Respondent and **RECOMMENDS** that all claims in the Petition be **DISMISSED with prejudice**, as they are procedurally defaulted and therefore outside of the scope of this Court's review.

**A. Grounds One and Three**

Grounds One and Three in the Petition are as follows:

GROUND 1: [Petitioner] is being [held] in violation of the right to confront his accuser contained in the Sixth Amendment and Fourteenth Amendments to the United States Constitution.

---

[2] Petitioner also argues that review of all Grounds in his Petition by this Court is still appropriate where the Petitioner establishes "good cause" because the procedural default doctrine is "judge made" as opposed to constitutionally based. (Doc. 7 at PageID 701–02). However, Petitioner cites to no law for this position. However, as Petitioner also appropriately cites to the cause and prejudice standard for excusing procedural default, this Court will review each of his procedurally defaulted grounds under that standard. *Id.*

8

> GROUND 3: [Petitioner's] trial counsel was ineffective, thereby robbing him of his right to a fair trial.

(Doc. 1 at PageID 5–8).

As an initial matter, a review of the state court record shows that Petitioner never raised any ineffective assistance of trial counsel claims before the Ohio state courts as he does so now in Ground Three. (*See* Doc. 5 at PageID 47–74, 186–202 (Exs. 6, 10)). In his Ground One claim, Petitioner alleges he was denied his Sixth Amendment confrontation rights, but a review of the record indicates the claims raised in Ground One also were never before the state courts. (*See* Doc. 1 at PageID 5; Doc. 5 at PageID 47–74, 186–202 (Exs. 6, 10)). As such, because constitutional claims for relief must be presented to a state's highest court to satisfy the fair presentation requirement before a federal court may perform a meritorious review of those claims, the claims alleged in Grounds One and Three are unexhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Where a petitioner fails to raise a constitutional claim before the state courts, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6, (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). But if a petitioner can no longer present his claims to the state courts because of a procedural default, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982)*; Sykes*, 433 U.S. 72 at 87.

9

Ohio employs a bifurcated system of appellate review. For claims based only on evidence contained in the trial record, a convicted defendant is expected to raise the claim on direct appeal or the claim is barred by the doctrine of res judicata. *See Hand v. Houk*, 871 F.3d 390, 408-409 (6th Cir. 2017). Generally only claims involving evidence outside the record may be raised in an Ohio petition for post-conviction relief. *Id.*

Petitioner filed a timely direct appeal but failed to raise any claims now alleged in Grounds One and Three. (*See* Doc. 5 at PageID 47–74 (Ex. 6)). Since Petitioner's Ground Three ineffective assistance of trial counsel claims are premised on events which occurred at Petitioner's trial, they could have and should have been raised on direct appeal, as Petitioner's direct appeal counsel was different from his trial counsel. *Lytle v. Buchanan*, No. 2:17-CV-1146, 2019 WL 3543083, at *1 (S.D. Ohio Aug. 5, 2019) (citing *State v. Perry*, 10 Ohio St. 2d 175 (1967) ("Ohio requires that any claim of ineffective assistance of trial counsel which can be raised and decided on the direct appeal record must be raised on direct appeal or be barred by res judicata.")). Similarly, Petitioner's Ground One right to confrontation claims stemming from the admission of hearsay evidence at his trial are also premised entirely on the trial record, and therefore should have been raised on direct appeal. *Butts v. Black*, No. 1:22-CV-00257, 2024 WL 167091, at *3 (N.D. Ohio Jan. 16, 2024) (Sixth Amendment confrontation claim was procedurally defaulted because a petitioner did not raise his confrontation claim on direct appeal to the state appellate court). As Petitioner did not raise any ineffective assistance of trial counsel or confrontation clause claims on direct appeal, his claims in Grounds One and Three of the Petition are procedurally defaulted.

Petitioner attempts to establish cause for the procedural default of his claims by alleging that his appellate counsel was instructed to file such claims to the Ohio Supreme Court but failed do so. (Doc. 7 at PageID 700–01). This argument is unpersuasive for several reasons.

First, as both Grounds One and Three should have been but were not raised in Petitioner's direct appeal before the state appellate court, it does not matter that Petitioner's appellate counsel failed to raise those claims to the Ohio Supreme Court. Under Ohio law, the judgment of conviction on direct appeal, and any adverse decision rendered by the trial court in postconviction, must be brought before both the Ohio Court of Appeals and the Supreme Court of Ohio. *Cowans v. Bagley*, 236 F. Supp. 2d 841, 855 (S.D. Ohio 2002).

Second, any ineffective assistance of appellate counsel claim, even when used as cause to excuse the procedural default of another claim, is procedurally defaulted due to failure to pursue that claim through "ordinary appellate review procedures." *See Williams*, 460 F.3d at 806; *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (explaining that an ineffective assistance of counsel claim asserted as "cause" to excuse the procedural default of another claim can itself be procedurally defaulted). Because Petitioner did not pursue an ineffective appellate counsel claim with the state courts, that claim cannot now be utilized as cause for overcoming the procedural default of any grounds in his Petition, including Grounds One and Three. *See Edwards*, 529 U.S. at 452.

For these reasons, this Court **RECOMMENDS** that Grounds One and Three be **dismissed with prejudice** as barred from review by the procedural default doctrine.

### B. Ground Two

Petitioner raises the following claim and facts in Ground Two of the Petition:

GROUND 2: [Petitioner] was denied his right to a fair trial when improper expert testimony was allowed to be produced at trial.

Supporting Facts: During the course of [Petitioner's] trial for felonious assault, a fact witness was allowed to offer expert testimony regarding the use of a firearm and whether the prosecuting witness was shot (because the prosecuting witness who was allegedly shot did not testify at trial). This violated [Petitioner's] right to a fair trial because this person was not identified as an expert and therefore [Petitioner]

11

> did not have time to view and test the credentials of this person. Further, had [Petitioner] known this person was going to be allowed to offer expert testimony, he would have requested a Daubert hearing regarding that testimony and its admissibility. Finally, [Petitioner] was not afforded a chance to hire his own expert witness in this regard.

(Doc. 1 at PageID 7).

Respondent submits that Ground Two is procedurally defaulted in two ways. First, Respondent argues that because the state appellate court's enforcement of Ohio's "contemporaneous objection rule" when denying Petitioner's Ground Two claims resulted in the claim's procedural default as the application of the rule constitutes "an adequate and independent state procedural bar." (Doc. 6 at PageID 690 (citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001))). Second, Respondent argues that Ground Two is unexhausted, as it was never presented to the Ohio Supreme Court, and procedurally defaulted, as the time has passed for him to do so. (*Id.* at PageID 691).

### 1. Ground Two was not fully reviewed by the Ohio state courts and is procedurally defaulted.

While Petitioner raised the same claim on direct appeal to the state appellate court as he now alleges in Ground Two, Petitioner did not subsequently raise this claim to the Ohio Supreme Court. (*See* Doc. 5 at PageID 115 (Ex. 8), 185–202 (Ex. 10)). Like Grounds One and Three, Petitioner's Ground Two claim is unexhausted as it was never presented to the Ohio Supreme Court. But it is also procedurally defaulted because he is now barred from presenting it. *Bagley*, 236 F. Supp. 2d at 855.

### 2. Ground Two is procedurally defaulted under the independent and adequate state law doctrine.

Procedural default may occur where a state prisoner attempts to raise a federal constitutional claim in state court, but the state court previously refused to consider the claim

12

because the claim was not properly raised under the state's procedural rules. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478 (1986). To find Petitioner's claim in Ground Two procedurally defaulted under the independent and adequate state ground doctrine as Respondent urges this Court to do, the state court must have explicitly relied on the procedural ground to deny petitioner relief. *See Ylst v. Nunnemaker,* 501 U.S. 797 (1991); *Harris v. Reed,* 489 U.S. 255, 259 (1989). Then, if the state appellate court declined to address the claim because the petitioner failed to meet a state procedural requirement constituting an "independent and adequate state ground," federal habeas courts may not consider the claim even if otherwise reviewable. *Coleman v. Thompson,* 501 U.S. 722, 730 (1991)).

Here, in its decision on Ground Two of Petitioner's direct appeal, the state appellate court explained that because Petitioner's trial counsel failed to comply with Ohio law by neglecting to "object to any of the alleged instances of prosecutorial misconduct that [Petitioner] now challenges on appeal," Petitioner had waived "all but plain error" review. (Doc. 5 at PageID 128 (Ex. 8) (citing *State v. Phifer*, 2d Dist. Clark No. 2020)). The state appellate court described the plain error scope of review as requiring Petitioner to "demonstrate that there was an obvious error in the proceedings and that but for the error, the outcome of his trial would have been different," ultimately finding Petitioner had not met his burden. (*Id.* at PageID 128–33 (citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62)). The Ohio Supreme Court then declined review, issuing a decision summarily denying jurisdiction over Petitioner's direct appeal (which did not include his Ground Two claims) without discussion. (*Id.* at PageID 253 (Ex. 12)).

In the Sixth Circuit, the application of plain-error review "even where a state court relied on the merits in issuing its decision . . . prevent[s] the state court from fully considering the merits of [a petitioner's] claim, and constitutes an independent and adequate state ground for a procedural

13

default." *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." (citing *Paprocki v. Foltz*, 869 F.2d 281, 284–85 (6th Cir. 1989))). Therefore, a state appellate court's review for plain error constitutes an enforcement of the state procedural bar by the reviewing court. *See Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle*, 271 F.3d at 244; *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)).[3]

Here, the state appellate court specifically enforced Ohio's procedural bar due to Petitioner's failure to object to the use of layman testimony as expert testimony during his trial by limiting its review to plain error. (Doc. 5 at PageID 127 (Ex. 8)). As the Ground Two claim was not before the Ohio Supreme Court on direct appeal, the last reasoned decision was that of the state court of appeals, which performed only a plain error review under the Ohio rule. Therefore, Petitioner's Ground Two claims are procedurally defaulted.

### 3. Petitioner failed to overcome the procedural default of his Ground Two claim.

As previously discussed, Petitioner cannot rely on his unexhausted ineffective assistance of appellate counsel claim to excuse the procedural default of another claim, since that claim, too, is procedurally defaulted. *Edwards*, 529 U.S. at 452. Because Petitioner advances no further cause arguments to excuse the procedural default of Ground Two or any argument in support of a

---

[3] Respondent argues that when the Ohio Supreme Court declines to consider a jurisdictional appeal in an unexplained decision, instead summarily declining jurisdiction to hear the case, as in Petitioner's case, such a denial must be presumed to rely on the same procedural default as the prior decision. (Doc. 6 at PageID 690). Respondent correctly recites the law. *See Levine v. Torvik*, 986 F.2d 1506, 1517 n. 8 (6th Cir.1993) (noting, in a case where the Ohio Supreme Court's order summarily denied the petitioner's appeal, that the Ohio Court of Appeals' decision served as the last reasoned opinion for habeas corpus purposes). But Petitioner failed to raise his Ground Two claim in his direct appeal to the Ohio Supreme Court, so this claim was not considered by the Ohio Supreme Court. As such, there is no basis to find the appellate court's reliance on state law when performing only a plain error review was relied upon by the Ohio Supreme Court when declining to hear Petitioner's direct appeal.

"fundamental miscarriage of justice" finding, Petitioner fails to establish any cause or prejudice allowing his procedural default of Ground Two to be excused. *See Coleman*, 501 U.S. at 753.

For these reasons, this Court **RECOMMENDS** that Ground Two be **dismissed with prejudice** as barred from review by the procedural default doctrine.

## IV. RECOMMENDED DISPOSITION

Accordingly, this Court **RECOMMENDS** that this action be **DISMISSED with prejudice** as barred by procedural default.

IT IS SO RECOMMENDED.


Date: May 22, 2024                         */s/ Kimberly A. Jolson*
                                           Kimberly A. Jolson
                                           UNITED STATES MAGISTRATE JUDGE

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.